IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE: MH2019-004895

No. 1 CA-MH 19-0065
FILED 8-4-2020

Appeal from the Superior Court in Maricopa County
No.  MH2019-004895
The Honorable Julie Ann Mata, Judge *Pro Tempore*

**VACATED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Anne Phillips
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo
*Counsel for Appellee*

---

**OPINION**

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge D. Steven Williams and Judge Samuel A. Thumma[1] joined.

---

**B R O W N**, Judge:

**¶1**         Appellant challenges the superior court's order for involuntary treatment, arguing the court erred by allowing her clinical liaison to testify about confidential information in violation of the behavioral health professional-client privilege. For the following reasons, we vacate the order.

**BACKGROUND**

**¶2**         Appellant received outpatient mental health services at a behavioral health center. Starting in May 2019, her clinical liaison was M.S., a professional counselor licensed by the Arizona Board of Behavioral Health Examiners.[2] After Appellant moved into a group home in late June, her mental health progressively deteriorated. As M.S. later recounted at the hearing in this matter, when she observed Appellant at the group home on July 9, Appellant was in a "highly agitative state" and was taken to the "emergency department" after becoming physically violent with staff by "pushing them." When M.S. arrived at the emergency department a short time later, she noticed that Appellant did not appear to recognize her and "presented in a catatonic state."

**¶3**         After the superior court ordered that Appellant be evaluated, a petition for court-ordered treatment was filed. The petition included affidavits of two evaluating physicians, who each opined that Appellant needed court-ordered treatment because she suffered from schizophrenia

---

[1]         Judge Samuel A. Thumma replaces the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge Thumma has read the briefs and reviewed the record.

[2]         In her position as a clinical liaison, M.S. engages in the application of psychological human development theories, principles, and techniques. Relating to Appellant, M.S. helped assess Appellant's mental illness symptoms and level of functioning to facilitate her human development.

and was persistently or acutely disabled. Both physicians stated they informed Appellant about the purpose of the evaluations and told her the information she disclosed to them was not confidential.

¶4        At the subsequent evidentiary hearing, Appellant's counsel objected to M.S. testifying as an acquaintance witness based on the "confidential relationship" between Appellant and M.S., asserting that A.R.S. § 32-3283 prohibited M.S. from testifying without Appellant's consent. *See generally* A.R.S. § 36-539(B) ("The evidence presented by the petitioner or the patient shall include the testimony of two or more witnesses acquainted with the patient at the time of the alleged mental disorder."). The State argued there was no "therapeutic relationship" and M.S. "was not acting in the therapeutic realm" when she interacted with Appellant. After permitting counsel to voir dire the witness, the superior court overruled the objection, and M.S. testified about her communications with Appellant and observations of her behavior.

¶5        After hearing testimony from a second acquaintance witness, the superior court dismissed the allegation that Appellant was a danger to others but found by clear and convincing evidence that due to a mental disorder she was persistently or acutely disabled and in need of psychiatric treatment. The court also determined there were no appropriate alternatives to court-ordered treatment and ordered Appellant to undergo treatment in a combined inpatient and outpatient treatment program until no longer persistently or acutely disabled, for a maximum of 365 days. This timely appeal followed.

## DISCUSSION

¶6        The scope of the behavioral health professional-client privilege is a question of law we review de novo. *See In re Kipnis Section 3.4 Tr.*, 235 Ariz. 153, 157, ¶¶ 7, 10 (App. 2014). We also review issues of statutory interpretation de novo. *In re MH2012-002480*, 232 Ariz. 421, 422, ¶ 5 (App. 2013). When interpreting statutes, we will apply the text as written if it is unambiguous. *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018). We review language in context and consider related statutes "for guidance and to give effect to all of the provisions involved." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017). Involuntary commitment of a person "may result in a serious deprivation of liberty;" thus, we require strict compliance with the applicable statutes. *In re Coconino Cty. No. MH 1425,* 181 Ariz. 290, 293 (1995).

¶7        Appellant argues M.S. should not have been permitted to testify because she and M.S. had established a confidential relationship under A.R.S. § 32-3283, which provides in part as follows:

> A.    The confidential relationship between a client and a licensee, including a temporary licensee, is the same as between an attorney and a client.  Unless a client waives this privilege in writing or in court testimony, a *licensee shall not voluntarily or involuntarily divulge information that is received by reason of the confidential nature of the behavioral health professional-client relationship*.

> B.    A licensee shall divulge to the board information the board requires in connection with any investigation, public hearing or other proceeding.

> C.    The behavioral health professional-client privilege does not extend to cases in which the behavioral health professional has a duty to:

>> 1.   Inform victims and appropriate authorities that a client's condition indicates a clear and imminent danger to the client or others pursuant to this chapter.

>> 2.   Report information as required by law.

(Emphasis added.)  Like the psychologist-patient privilege, the behavioral health professional-client privilege prohibits testimony that falls "within the scope of the privilege."  *See Bain v. Superior Court*, 148 Ariz. 331, 334-36 (1986) (noting that A.R.S. § 32-2085 places the psychologist-patient privilege "on the same basis" as the attorney client privilege and that only the client "has the right to waive it as to any confidential communications with her psychologist").

¶8        The superior court ruled M.S. could testify as an acquaintance witness under the exceptions contained in A.R.S. § 32-3283(B) and (C).  Subsection (B), however, does not apply because M.S. was not divulging information to the licensing board when she testified.  And the exception under subsection (C)(1) has no application here.  Nothing in the record shows that M.S. and Appellant had any interaction between July 9 and July 22, the date of the commitment hearing, meaning that at the time she testified M.S. could not have intended to disclose information received from Appellant indicating an "imminent" danger to herself or others.   Nor can we sustain the ruling on the ground that M.S. had an obligation to "report

information as required by law" under subsection (C)(2). Unlike the two physicians who were ordered by the court to evaluate Appellant, no court had ordered M.S. to evaluate and opine about Appellant's mental state. *See Appeal in Pima Cty. Mental Health Case No. MH 1717-1-85*, 149 Ariz. 594, 596 (App. 1986) (rejecting the claim that evaluating physicians breached the physician-patient privilege by testifying in a civil commitment proceeding).

¶9 On appeal, the State does not defend the superior court's reasoning; instead, the State contends no confidential relationship existed because M.S. did not provide counseling, psychotherapy, or any other behavioral health service to Appellant. Alternatively, the State argues the privilege protects only confidential communications, which do not include M.S.'s observations of Appellant's behavior.

¶10 Under A.R.S. § 32-3283, the legislature directed that the confidential nature of a behavioral health professional-client privilege shall be the same as that between an attorney and client, which is the oldest privilege recognized by law. *See State v. Sucharew*, 205 Ariz. 16, 21, ¶ 10 (App. 2003). "In a civil action an attorney shall not, without the consent of his client, be examined as to *any communication* made by the client to him, or his advice given thereon in the course of professional employment." A.R.S. § 12-2234(A) (emphasis added). The scope of the attorney-client privilege is governed by statute. *See State ex rel. Thomas v. Schneider*, 212 Ariz. 292, 296, ¶ 19 (App. 2006) (applying the legislature's definition of the scope of the attorney-client privilege). Similarly, we determine the scope of the behavioral health professional-client privilege by applying the statutory language creating that privilege. *See id.*; Ariz. R. Evid. 501 ("The common law--as interpreted by Arizona courts in the light of reason and experience--governs a claim of privilege unless . . . the following provides otherwise . . . *an applicable statute; or rules prescribed by the Supreme Court*.") (emphasis added).

¶11 To decide whether a confidential relationship existed, and, if so, whether information "received by reason of the confidential nature" of that relationship was disclosed at the commitment hearing, we look to the statutory scheme governing behavioral health professionals. *See* A.R.S. § 32-3283. The "[p]ractice of professional counseling" refers to the "application of mental health, psychological and human development theories, principles and techniques," to, *inter alia*, (1) "[f]acilitate human development," (2) "[m]anage symptoms of mental illness," and (3) "[a]ssess, appraise, evaluate, diagnose and treat individuals . . . through the use of psychotherapy." A.R.S. § 32-3251(10)(a), (d), (e). "Psychotherapy" is defined as "a variety of treatment methods developing out of generally

accepted theories about human behavior and development." A.R.S. § 32-3251(14).

¶12 M.S. testified that before July 9, she met with Appellant six times in person and talked by phone with her about the same number of times. M.S. explained that (1) at the group home on July 9, Appellant was experiencing/exhibiting paranoia, making statements like "they're out to get [me], [and] they know [my] movements"; (2) there were times when Appellant was not feeling comfortable eating food given to her at the group home, expressing concern that "they're messing with it, they've put things in it"; (3) on several occasions she would not take her medication, and in this instance, she had not taken it for eight days because she thought it was unsafe; and (4) when M.S. saw Appellant on July 9, she told M.S. she had not showered for four days. M.S. then opined that Appellant would not voluntarily take her medication.

¶13 No testimony was offered showing that Appellant was informed that her July 9 interaction with M.S., or any prior interactions, fell outside the scope of a behavioral health professional-client relationship or that Appellant consented to M.S.'s disclosure of information acquired during such relationship. *See* A.R.S. § 32-3283(A). And even though M.S. testified she did not provide "therapy or counseling," she acknowledged having a confidential relationship with Appellant in which she made assessments of her symptoms of mental illness. M.S. also stated she facilitated "human development" for Appellant. *See* A.R.S. § 32-3251(10)(a). Regardless of how M.S. characterized her services to Appellant, given the breadth of the definition of the "practice of professional counseling," *see supra* ¶ 11, there is no reasonable contention that she did not provide behavioral health services to Appellant. *See* A.R.S. § 32-3251(10)(d), (e); A.R.S. § 32-3251(8) (the "[p]ractice of behavioral health" includes "professional counseling"); A.R.S. § 32-3251(2) (defining a client as a "patient who receives behavioral health services from a person licensed pursuant to this chapter"). Accordingly, the relationship established between M.S. and Appellant was confidential and thus subject to the behavioral health professional-client privilege.

¶14 The State argues that M.S.'s testimony about her "personal observations" of Appellant's behavior did not breach the privilege because M.S. did not disclose any confidential communication with Appellant. Instead, the State argues, M.S. was simply describing what she saw, and not testifying about what Appellant told her, when she testified that (1) Appellant appeared to be in a highly agitated state and was pacing back and forth; (2) she had experienced "pretty significant paranoia"; (3) she had

not been taking her medications; (4) she was in a catatonic state at the emergency department; and (5) she "appear[ed] to respond to internal stimuli; so inappropriate laughter or responding to questions that weren't asked, which is often consistent with auditory hallucinations." The State's argument is not persuasive.[3]

¶15         Notwithstanding the fact that a behavioral health professional-client relationship is the "same" as the attorney-client relationship, which protects confidential communications between attorney and client, the privilege at issue here is broader in that it protects "information received by reason of the" relationship. *Compare* A.R.S. § 32-3283(A) *with* A.R.S. § 12-2234(A). Each of M.S.'s observations occurred because she was Appellant's clinical liaison; those observations therefore constituted "information [M.S.] received by reason" of her confidential relationship with Appellant. In that setting, Appellant divulged information about what she was experiencing to M.S., who was presumably able to use that information, together with her own observations of Appellant's behavior, for the purpose of providing behavioral health services to Appellant. The information M.S. received, whether by hearing the words directly from Appellant or by observing her behavior, was protected by the privilege because she acquired the information in the course of providing mental-health services to Appellant. *See* A.R.S. § 32-3283(A) (prohibiting disclosure of "information that [was] received *by reason of the confidential nature* of the behavioral health professional-client relationship") (emphasis added); A.A.C. R4-6-1105(A) (prohibiting a behavioral health licensee from releasing or disclosing "client records or *any information regarding a client*" except in accordance with federal or state law or by written authorization) (emphasis added); *see also* A.R.S. § 32-3251(3) (defining "[d]irect client contact" as "the performance of therapeutic or clinical functions related to the applicant's professional

---

3         We reject the State's assertion that these observations of Appellant's behavior occurred "in the presence of third parties," thereby eliminating any contention they were confidential communications. *See Bain*, 148 Ariz. at 334 (explaining that a client may impliedly waive the psychologist-patient privilege by pursuing "a course of conduct inconsistent with observance of the privilege"). Even assuming waiver would apply in such circumstances, the State did not make that argument in the superior court or present any evidence indicating third parties were present when M.S. made the observations. On this record, Appellant did not waive any portion of the privilege.

practice level of psychotherapy . . . based primarily on verbal or nonverbal communications and intervention").

¶16　　In short, contrary to the State's contention, A.R.S. § 32-3283 does not permit behavioral health professionals to disclose, through testimony or otherwise, their observations of a client's behavior based on information they received in their professional relationship with the client. To hold otherwise would severely undermine the purposes of the privilege. Like the attorney-client privilege, the behavioral health professional-client privilege is intended to encourage a client to be candid with his or her mental health professional. *See Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501, 504 (1993). Without the privilege, a client may not trust a behavioral health professional enough to share information that would enable the professional to provide appropriate treatment. *See id.* The purposes behind the physician-patient privilege and the psychologist-patient privilege are also similar in that they seek to ensure "that a person requiring professional attention will not be deterred by fear that his physical or mental condition may become public, thereby subjecting him to embarrassment or humiliation." *See Bain*, 148 Ariz. at 334 n.1; *see also Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) ("Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears.").

¶17　　Consistent with those purposes, a client would reasonably expect his or her behavioral health professional would keep confidential all information the professional receives about the client's behavior, symptoms, and treatment, including verbal or non-verbal communications. We therefore hold the superior court erred in permitting M.S. to testify about information Appellant relayed to her as part of their confidential relationship, including information relative to her mental condition that M.S. obtained from observing Appellant's behavior.

¶18　　Without M.S.'s testimony, the commitment order must be vacated because it is supported by the testimony of only one acquaintance witness, not the two such witnesses that the law requires. *See* A.R.S. § 36-539(B) (At an involuntary treatment hearing, evidence "shall include the testimony of two or more witnesses acquainted with the patient at the time of the alleged mental disorder."). This is not to say, however, that a behavioral health professional can never testify as an acquaintance witness. *See MH 1425*, 181 Ariz. at 293 (unrelated to privilege, finding that "acquaintance witnesses may not include those who have participated in the psychological evaluation of the patient *for commitment purposes*," but may include medical personnel not part of the evaluation process)

(emphasis added); *Matter of Appeal in Pima Cty. Mental Health Matter No. MH 862-16-84*, 143 Ariz. 338, 340 (App. 1984) (though predating the privilege statute, the court concluded that a hospital nurse who had "frequent contact" with the patient qualified as an acquaintance witness under A.R.S. § 36-539(B) even though she "may have been more enlightened than the average person regarding hospitalization and treatment for mental disorders"). But if the professional has established a confidential relationship with the patient, then the privilege must be honored. *Cf. MH 1425*, 181 Ariz. at 293 (noting the challenges in identifying acquaintances of certain patients facing involuntary commitment, but confirming that "[b]ecause such proceedings may result in a serious deprivation of liberty," the statutory requirements must be strictly followed).

## CONCLUSION

**¶19**         We vacate the superior court's order for involuntary treatment.

