NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE: MH2020-004882

No. 1 CA-MH 20-0090
1 CA-MH 20-0098
(Consolidated)

FILED 4-1-2021

---

Appeal from the Superior Court in Maricopa County
No.  MH2020-004882
MH2020-005526
The Honorable Aryeh D. Schwartz, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo, Tawn T. Tao
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellants*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which
Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1 In this consolidated appeal, J.H. and M.P. appeal superior court orders requiring they each undergo involuntary inpatient and outpatient mental health treatment. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

I. Appellant J.H., MH 20-0090

¶2 F.M. is a licensed independent clinical social worker employed at a hospital emergency room, serving as "crisis intervention" for individuals who have made threats of self-harm. In this role, F.M. assesses whether a patient can be safely discharged and sent home or requires admission to the hospital for further evaluation by a psychiatrist.

¶3 J.H. went to the hospital for chest pains, and while in the emergency room, he made statements to his attending nurse about harming himself. J.H.'s attending nurse notified F.M. F.M. made contact with J.H. to determine whether J.H. was suicidal and "oriented to person, place, time." F.M. warned J.H. that the confidentiality of their conversation had limits, and if J.H. made statements about harming himself or others, F.M. would be required to report it "to the appropriate authorities."

¶4 J.H. told F.M. that he felt "unstable" and had thoughts of cutting his wrists. F.M. asked J.H. if he had ever had these thoughts before, and J.H. stated he had previously attempted suicide twice. F.M. asked J.H. if he was taking the medications prescribed for his mental health, and J.H. said he was not. Based on these statements, F.M. deemed it unsafe to discharge J.H. and offered J.H. voluntary admission to the hospital to undergo a psychiatric evaluation. J.H. said he would "think about it," although F.M. made it clear that J.H. would not be able to leave the hospital because he was found to be at high risk for suicide. F.M. gave a voluntary consent form to J.H. and left the room to give J.H. time to think.

¶5 F.M. returned to J.H.'s hospital room, and J.H. refused to sign the voluntary consent form. F.M. notified J.H. that he would initiate an involuntary petition, and J.H. began yelling, cursing, and making threats towards F.M. F.M. filed a petition for a court-ordered evaluation and emergency admission. J.H. was subsequently hospitalized and was evaluated; the evaluating physicians opined that J.H. required inpatient and outpatient treatment. Due to J.H.'s unwillingness to cooperate with a voluntary treatment plan, a petition for court-ordered treatment was filed.

¶6        An evidentiary hearing was held on the petition, which requires that two acquaintance witnesses testify.  *See* Ariz. Rev. Stat. ("A.R.S.") § 36-539(B).  J.H. objected to F.M. testifying on the grounds he and F.M. had a confidential behavioral health professional-client relationship.  After voir dire of F.M., the superior court found a confidential behavioral health professional-client relationship did not exist, and it permitted F.M. to testify as an acquaintance witness.

¶7        Following the testimony of F.M. and J.H.'s grandfather, and after its review of the affidavits from the evaluating physicians, the court found by clear and convincing evidence that J.H. "is suffering from a mental disorder and, as a result, is persistently or acutely disabled, is a danger to self and is in need of treatment and is either unwilling or unable to accept voluntary treatment."  The court ordered J.H. to undergo combined inpatient and outpatient treatment until he was no longer persistently or acutely disabled, for a maximum of 365 days.  J.H. timely appealed the treatment order.

II.    Appellant M.P., MH 20-0098

¶8        W.G. is a licensed clinical social worker employed at a hospital.  M.P. came to that hospital's emergency room due to psychosis, and W.G. spoke with M.P.  W.G. told M.P. that she would be asking questions to determine if there was a risk M.P. may harm herself or others, and if M.P. disclosed anything regarding those questions, those statements would not be confidential.  W.G. told M.P. that the statements she made could be used in a petition for court-ordered treatment and as testimony in a hearing related to such a petition.

¶9        W.G. noted that M.P. appeared to be very agitated and M.P. stated she was experiencing "audio from the outside," which caused her to have thoughts about harming herself and suicide.  W.G. tried to learn more information about M.P.'s mental health history, but M.P. was fixated on the audio and continued to make statements that "she didn't want to be here" anymore and that it "wasn't worth it to live."  W.G. told M.P. that she required mental health treatment, but M.P. was uncooperative and refused voluntary treatment.  M.P. stated she had gone to a psychiatric hospital before and did not want to return because "they lied to her."  She stated she stopped taking her psychiatric medications because they did not work.

¶10        W.G. filed a petition for a court-ordered evaluation, and M.P. was involuntarily hospitalized for evaluation.  M.P. objected to her hospitalization and sought to participate in the evaluation process as

outpatient. However, following a hearing, the superior court found "reasonable cause to believe the proposed patient, as a result of a mental disorder, is persistently or acutely disabled, danger to self, as alleged in the Petition." The court further found that M.P. would not voluntarily be present for a court evaluation if she was released, and it ordered that she "continue to be detained pending the involuntary inpatient evaluation."

¶11        M.P. was subsequently evaluated and the evaluating physicians opined that M.P. required inpatient treatment and intensive case management under court order until she was stable enough for outpatient treatment. A petition for court-ordered treatment was filed.

¶12        During the evidentiary hearing on the petition, M.P. objected to W.G.'s testifying as an acquaintance witness due to an alleged confidential behavioral health professional-client relationship. After voir dire, the court found a confidential behavioral health professional-client relationship did not exist and allowed W.G.'s testimony. Following the testimony of W.G. and M.P.'s mother, and after reviewing the evaluating physicians' affidavits, the court found by clear and convincing evidence that M.P. "is suffering from a mental disorder and, as a result, is persistently or acutely disabled, is in need of treatment and is either unwilling or unable to accept voluntary treatment." The court ordered M.P. to undergo combined inpatient and outpatient treatment until she was no longer persistently or acutely disabled, for a maximum of 365 days. M.P. timely appealed the treatment order.

¶13        We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 36-546.01.

## DISCUSSION

¶14        Appellants argue that their treatment orders must be vacated because the State did not comply with the statutory requirements of A.R.S. § 36-539(B). Appellants both allege that one of their two witnesses was not permitted to testify due to a confidential behavioral health professional-client relationship under A.R.S. § 32-3283. "The scope of the behavioral health professional-client privilege is a question of law we review de novo." *In re MH2019-004895*, 249 Ariz. 283, 286, ¶ 6 (App. 2020). We review issues of statutory interpretation de novo, but we view the facts in the light most favorable to upholding the superior court's judgment and will not set aside its findings unless clearly erroneous. *In re MH 2001-001139*, 203 Ariz. 351, 353, ¶ 8 (App. 2002); *In re MH 2008-002596*, 223 Ariz. 32, 35, ¶ 12 (App. 2009).

¶15        Section 32-3283(A) provides:

The confidential relationship between a client and a licensee, including a temporary licensee, is the same as between an attorney and a client. Unless a client waives this privilege in writing or in court testimony, a licensee shall not voluntarily or involuntarily divulge information that is received by reason of the confidential nature of the behavioral health professional-client relationship.

A.R.S. § 32-3283(A).

¶16 Section 32-3251(2) defines client as a "patient who receives behavioral health services from a person licensed pursuant to this chapter." "Practice of behavioral health" includes "professional counseling," and "[p]ractice of professional counseling" refers to "the professional application of mental health, psychological and human development theories, principles and techniques to:" (a) "[f]acilitate human development and adjustment throughout the human life span"; (b) "[a]ssess and facilitate career development"; (c) "[t]reat interpersonal relationship issues and nervous, mental and emotional disorders that are cognitive, affective or behavioral"; (d) "[m]anage symptoms of mental illness"; and (e) "[a]ssess, appraise, evaluate, diagnose and treat individuals, couples, families and groups through the use of psychotherapy." A.R.S. § 32-3251(8), (10). "Psychotherapy" is defined as "a variety of treatment methods developing out of generally accepted theories about human behavior and development." A.R.S. § 32-3251(14).

¶17 F.M. testified that he did not provide therapy or counseling during his interaction with J.H. and spoke with J.H. for only about fifteen to twenty minutes. Similarly, W.G. testified that she did not provide M.P. with any counseling or psychotherapy, and those services were not part of her job. W.G. also spoke to M.P. on only one occasion and for about forty-five minutes. Both F.M. and W.G. spoke to Appellants in the emergency room of hospitals to determine only whether Appellants posed a risk of harm to themselves or to others or required hospitalization to prevent such harm from occurring.

¶18 Appellants, however, claim F.M. and W.G. provided behavioral health services to them and formed a confidential relationship with them during their interactions. Appellants cite *MH2019-004895*, which found a behavioral health professional had a confidential relationship with the patient, and her testimony as an acquaintance witness should not have been permitted. 249 Ariz. at 289, ¶¶ 17-18. The facts of that case differ from those in the cases of J.H. and M.P., however. In *MH2019-004895*, the

acquaintance witness at issue was a professional counselor, assigned to the patient as a clinical liaison for her outpatient mental health services. *Id.* at 285, ¶ 2. The counselor had an on-going relationship with the patient, speaking with the patient on about twelve different occasions. *Id.* at 287, ¶ 12. The counselor also admitted to having a confidential relationship with the patient. *Id.* at ¶ 13.

**¶19** *MH2019-004895* also differs because "[n]o testimony was offered showing that [the patient] was informed that her . . . interaction with [the counselor], or any prior interactions, fell outside the scope of a behavioral health professional client relationship." 249 Ariz. at 287, ¶ 13. Here, the purpose of the conversations was to determine J.H. and M.P.'s risk of suicide. Both F.M. and W.G. made clear that any statements Appellants made about harming themselves would not remain confidential. *See MH2019-004895*, 249 Ariz. at 286, ¶ 7 ("[T]he behavioral health professional-client privilege prohibits testimony that falls 'within the scope of the privilege.'") (quoting *Bain v. Superior Court*, 148 Ariz. 331, 334-36 (1986)). W.G. went so far as to tell M.P. that the statements she made could be used in a petition for treatment or as testimony in a hearing. Based on F.M.'s and W.G.'s pre-discussion warnings, it would be unreasonable for Appellants to believe these statements would remain confidential. *See In re Pima Cnty. Mental Health Case No. MH1717-1-85*, 149 Ariz. 594, 596 (App. 1986); *State v. Ortiz*, 144 Ariz. 582, 583-84 (App. 1985).

**¶20** Nothing in the record suggests that the interactions between F.M. and W.G. and Appellants rose to the level of behavioral health services, thereby establishing a confidential behavioral health professional-client relationship under A.R.S. § 32-3283. Accordingly, the superior court did not err in allowing F.M. and W.G. to testify as acquaintance witnesses at each of the two hearings on the petitions for court-ordered treatment.

**CONCLUSION**

**¶21** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

6