IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE: MH2020-004882

No. 1 CA-MH 20-0090
1 CA-MH 20-0098
(Consolidated)
FILED 7-13-2021

Appeal from the Superior Court in Maricopa County
No.  MH2020-004882
MH2020-005526
The Honorable Aryeh D. Schwartz, Judge

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo, Tawn T. Tao
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellants*

**OPINION**

Judge Maria Elena Cruz delivered the opinion of the Court, in which
Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

**C R U Z**, Judge:

¶1        In this consolidated appeal, two mental health patients argue the superior court erred by allowing testimony by clinical social workers who assessed them in the emergency room and concluded each needed to be evaluated by physicians for possible harm to themselves or others. The patients argue the social workers testified in violation of a statutory privilege that accords information "received by reason of the confidential nature of the behavioral health professional-client relationship." Arizona Revised Statutes ("A.R.S.") section 32-3283(A). We hold that a clinical social worker does not provide "behavioral health services" where he or she interacts with a patient only once to assess whether the patient should be evaluated as a risk of harm to themselves or others and where the social worker has warned the patient at the outset that any statements the patient makes about harming self or others will not remain confidential.

## FACTUAL AND PROCEDURAL HISTORY

I.        Appellant J.H., MH 20-0090

¶2        F.M. is a licensed clinical social worker employed at a hospital, where he performs "crisis intervention" in the emergency room for individuals who have threatened self-harm. In this role, F.M. assesses whether a patient can be safely discharged home or must be admitted to the hospital for further evaluation by a psychiatrist.

¶3        J.H. went to the hospital for chest pains, and while in the emergency room, he made statements about harming himself. A nurse notified F.M., who interviewed J.H. to determine whether he was suicidal and "oriented to person, place, time." F.M. warned J.H. that the confidentiality of their conversation had limits and told him that if he made statements about harming himself or others, F.M. would be required to report it "to the appropriate authorities."

¶4        J.H. told F.M. that he felt "unstable" and had thought about cutting his wrists. F.M. asked J.H. if he had ever had these thoughts before, and J.H. stated he had attempted suicide twice before. F.M. asked J.H. if he was taking his prescribed mental health medications, and J.H. said he was not. Based on these statements, F.M. deemed it unsafe to discharge J.H. without a psychiatric evaluation. When he told J.H. that he would not be allowed to leave the hospital, given that he was at high risk for suicide, J.H. responded by yelling, cursing, and threatening F.M. J.H. was admitted and

evaluated, and the evaluating physicians opined that he required inpatient and outpatient treatment.

¶5        At the evidentiary hearing on the petition for court-ordered treatment, F.M. was called to testify as one of the two required acquaintance witnesses. *See* A.R.S. § 36-539(B). J.H. objected, arguing he and F.M. had a confidential behavioral health professional-client relationship. After voir dire of F.M., the superior court found a confidential behavioral health professional-client relationship did not exist, and it permitted F.M. to testify.

¶6        After hearing the testimony of F.M. and J.H.'s grandfather and reviewing affidavits from the evaluating physicians, the court found by clear and convincing evidence that J.H. "is suffering from a mental disorder and, as a result, is persistently or acutely disabled, is a danger to self and is in need of treatment and is either unwilling or unable to accept voluntary treatment." The court ordered J.H. to undergo combined inpatient and outpatient treatment until he was no longer persistently or acutely disabled, for a maximum of 365 days. J.H. timely appealed the treatment order.

II.    Appellant M.P., MH 20-0098

¶7        W.G. is a licensed clinical social worker employed at a hospital. M.P. presented at that hospital's emergency room with psychosis, and W.G. spoke with her there. W.G. told M.P. that she would be asking questions to determine if there was a risk M.P. might harm herself or others, and that M.P.'s statements in response to those questions would not be as confidential. W.G. expressly told M.P. that her statements could be used in a petition for court-ordered treatment and at a hearing related to such a petition.

¶8        W.G. noted that M.P. appeared to be very agitated, and M.P. said she was experiencing "audio from the outside," which caused her to think about harming herself and suicide. W.G. tried to ask M.P. about her mental health history, but M.P. was fixated on the "audio" and continued to say that "she didn't want to be here" anymore and that it "wasn't worth it to live." W.G. told M.P. that she required mental health treatment, but M.P. refused to consent to treatment. M.P. stated she had gone to a psychiatric hospital before and did not want to return because "they lied" to her. She also said she stopped taking her psychiatric medications because they did not work.

**¶9**        After evaluating M.P., two physicians concluded she required involuntary inpatient treatment and intensive case management until she was stable enough for outpatient treatment.  A petition for court-ordered treatment was filed.

**¶10**        During the evidentiary hearing that followed, M.P. objected to W.G.'s testifying as an acquaintance witness, arguing she had a confidential behavioral health professional-client relationship with W.G.  After voir dire, the court found a confidential behavioral health professional-client relationship did not exist and allowed W.G. to testify.  After hearing the testimony of W.G. and M.P.'s mother and reviewing the evaluating physicians' affidavits, the court found by clear and convincing evidence that M.P. "is suffering from a mental disorder and, as a result, is persistently or acutely disabled, is in need of treatment and is either unwilling or unable to accept voluntary treatment."  The court ordered M.P. to undergo combined inpatient and outpatient treatment until she was no longer persistently or acutely disabled, for a maximum of 365 days.  M.P. timely appealed the treatment order.

**¶11**        We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 36-546.01.

## DISCUSSION

**¶12**        Appellants argue that the two licensed clinical social workers testified in violation of A.R.S. § 32-3283, which establishes a privilege that, with certain exceptions, precludes a licensee from disclosing information received from a client.  Appellants contend their treatment orders must be vacated because, absent the social workers' testimony, the State did not present both of the two acquaintance witnesses required by A.R.S. § 36-539(B).  "The scope of the behavioral health professional-client privilege is a question of law we review de novo."  *In re MH2019-004895*, 249 Ariz. 283, 286, ¶ 6 (App. 2020).  We review issues of statutory interpretation de novo, but we view the facts in the light most favorable to upholding the superior court's judgment and will not set aside its findings unless clearly erroneous.  *In re MH 2001-001139*, 203 Ariz. 351, 353, ¶ 8 (App. 2002); *In re MH 2008-002596*, 223 Ariz. 32, 35, ¶ 12 (App. 2009).

**¶13**        Section 32-3283(A) limits disclosure by a licensed behavioral health professional, including a clinical social worker licensed pursuant to A.R.S. § 32-3293, of certain information received from a "client."  Under 32-3283(A):

4

The confidential relationship between a client and a licensee, including a temporary licensee, is the same as between an attorney and a client. Unless a client waives this privilege in writing or in court testimony, a licensee shall not voluntarily or involuntarily divulge information that is received by reason of the confidential nature of the behavioral health professional-client relationship.

A.R.S. § 32-3283(A).

¶14 Section 32-3251(2) defines client as a "patient who receives behavioral health services from a person licensed pursuant to this chapter." "Practice of behavioral health" includes "professional counseling," and "[p]ractice of professional counseling" refers to "the professional application of mental health, psychological and human development theories, principles and techniques to:" (a) "[f]acilitate human development and adjustment throughout the human life span"; (b) "[a]ssess and facilitate career development"; (c) "[t]reat interpersonal relationship issues and nervous, mental and emotional disorders that are cognitive, affective or behavioral"; (d) "[m]anage symptoms of mental illness"; and (e) "[a]ssess, appraise, evaluate, diagnose and treat individuals, couples, families and groups through the use of psychotherapy." A.R.S. § 32-3251(8), (10). "Psychotherapy" is defined as "a variety of treatment methods developing out of generally accepted theories about human behavior and development." A.R.S. § 32-3251(14).

¶15 F.M. testified that he spoke with J.H. for only about fifteen to twenty minutes and did not provide him any therapy or counseling. Similarly, W.G. testified she spoke to M.P. only once, for about forty-five minutes, and did not provide her with any counseling or psychotherapy, which were not part of her job. Both clinical social workers testified they spoke to Appellants in the emergency room only to determine whether they posed a risk of harm to themselves or to others or required hospitalization to prevent such harm from occurring.

¶16 Appellants, however, claim F.M. and W.G. provided behavioral health services to them and formed a confidential relationship with them during their interactions. Appellants cite *MH2019-004895*, which held that because a professional mental health counselor had a confidential relationship with the patient, the counselor should not have been permitted to testify as an acquaintance witness. 249 Ariz. at 289, ¶¶ 17-18. The facts of that case differ from those here, however. There, the witness was a professional counselor assigned to the patient as a clinical liaison, who had

an on-going relationship with the patient and had spoken with her on about twelve different occasions. *Id.* at 287, ¶¶ 2, 12. The counselor also admitted she had a confidential relationship with the patient. *Id.* at ¶ 13.

**¶17** In addition, there was in that case "[n]o testimony . . . showing that [the patient] was informed that her . . . interaction with [the counselor], or any prior interactions, fell outside the scope of a behavioral health professional client relationship." *Id.* Here, by contrast, the purpose of the social workers' conversations with J.H. and M.P. was to determine whether either posed a risk of suicide, and F.M. and W.G. both made clear that any statements they made about harming themselves would not remain confidential. *See id.* at 286, ¶ 7 ("[T]he behavioral health professional-client privilege prohibits testimony that falls 'within the scope of the privilege.'") (quoting *Bain v. Superior Court*, 148 Ariz. 331, 334-36 (1986)). W.G. went so far as to tell M.P. that the statements she made could be used in a petition for treatment or as testimony in a hearing. Based on the pre-discussion warnings the social workers gave J.H. and M.P, it would be unreasonable for them to believe the social workers would keep confidential any statements they made that revealed a risk of harm to themselves or others. *See In re Pima Cnty. Mental Health Case No. MH1717-1-85*, 149 Ariz. 594, 596 (App. 1986); *State v. Ortiz*, 144 Ariz. 582, 583-84 (App. 1985).

**¶18** Nothing in the record suggests that the interactions between F.M. and W.G. and Appellants rose to the level of behavioral health services that might create confidential behavioral health professional-client relationships under A.R.S. § 32-3283. Accordingly, the superior court did not err in allowing F.M. and W.G. to testify as acquaintance witnesses at the hearings on the petitions for court-ordered treatment.

**CONCLUSION**

**¶19** We affirm.

