IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

### IN RE: MH2023-004502

---

No. CV-24-0275-PR
Filed February 11, 2026

---

Appeal from the Superior Court in Maricopa County
The Honorable Nicolas B. Hoskins, Commissioner
No.   MH2023-004502
**AFFIRMED**

---

Opinion of the Court of Appeals, Division One
258 Ariz. 556 (App. 2024)
**VACATED**

---

COUNSEL:

Rachel H. Mitchell, Maricopa County Attorney, Sean M. Moore (argued), Deputy County Attorney, Phoenix, Attorneys for State of Arizona

Sherri McGuire Lawson, Maricopa County Legal Defender, Robert S. Shipman (argued), Deputy Legal Defender, Maricopa County Legal Defender's Office, Phoenix, Attorneys for MH 2023-004502

Joseph Adam Carver, Deputy Legal Defender, Coconino County Legal Defender's Office, Flagstaff; Jennifer W. Stock, Deputy Public Defender, Coconino County Public Defender's Office, Flagstaff; Rosemarie Peña-Lynch, Maricopa County Office of Public Defense Services, Phoenix; Steve B. Koestner, Deputy Legal Advocate, Maricopa County Office of the Legal Advocate, Phoenix; Robert S. Lerman, Pascal Brown, Deputy Public Advocates, Maricopa County Office of the Public Advocate, Mesa; Gary M. Kula, Deputy Public Defender, Maricopa County Office of the Public Defender, Phoenix; and Ann L. Bowerman, Deputy Mental Health Defender, Pima County Mental Health Defender, Tucson, Attorneys for Amici Curiae

JUSTICE MONTGOMERY authored the Opinion of the Court, in which
CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES
BOLICK, BEENE, KING, and BERCH (Retired) joined.[*]

_____

JUSTICE MONTGOMERY, Opinion of the Court:

**¶1**          Arizona law establishes a multi-step process for the
involuntary treatment of a mental disability.    Preliminary to a
court-ordered evaluation for mental health treatment, "[a]ny responsible
individual may apply for a court-ordered evaluation of a person who"
meets specified criteria involving a mental disability and "is unwilling or
unable to undergo a voluntary evaluation."    *See* A.R.S. § 36-520(A) (2022).[1]
Then, a licensed healthcare agency conducts a screening evaluation of the
person.   *See* A.R.S. § 36-521(A).   If the screening establishes reasonable
cause to believe that the person has a mental disability and will not
voluntarily undergo an evaluation, the healthcare agency must prepare and
file a petition for a court-ordered evaluation.   *See* A.R.S. § 36-521(D).

**¶2**          If, after reviewing the petition, the superior court finds
reasonable cause to believe that the statutory criteria are met, the court must
order an evaluation.   *See* A.R.S. § 36-529(B).   If the evaluating agency
determines that the person—now designated as the patient—has a serious
mental health disability, the agency must petition the court for an order for
treatment.   *See* A.R.S. § 36-531(B).

**¶3**          At the hearing on the petition for court-ordered treatment
("COT"), the petitioner must provide "the testimony of two or more
witnesses . . . acquainted with the patient at the time of the alleged mental
disorder" ("acquaintance witnesses"), as well as testimony from two
physicians or healthcare professionals who evaluated the patient.   *See*
A.R.S. § 36-539(B).   If the court finds clear and convincing evidence of the

_____

[*]   Justice Maria Elena Cruz is recused from this matter.   Pursuant to
article 6, section 3 of the Arizona Constitution, Justice Rebecca White Berch
(Retired) of the Arizona Supreme Court was designated to sit in this matter.
[1]   Because the statutes in question were significantly amended by the
Legislature in 2025, we cite to the versions in effect at the time of this case.
We note as appropriate where amendments affect our analysis.

need for treatment, it may order inpatient, outpatient, or combined care. *See* A.R.S. § 36-540(A), (D).

¶4        In this case, a licensed social worker, M.G., assessed A.R. to gather information for the purpose of determining an appropriate level of care, including whether to petition for a court-ordered evaluation.   Later, at a hearing on a COT petition for A.R., M.G. testified as an acquaintance witness.   Two issues arise from these circumstances.   First is whether M.G., given her status as a licensed social worker and role in the screening process, could testify as an acquaintance witness under § 36-539(B) at A.R.'s COT petition hearing.   Second is whether M.G. and A.R. had a confidential "behavioral health professional-client relationship" under A.R.S. § 32-3283(A), which would preclude M.G. from testifying about any information received from A.R.

¶5        With respect to the first issue, on March 31, 2025, the Legislature amended § 36-539(B) to clarify that licensed behavioral health professionals may testify as acquaintance witnesses under the circumstances presented here.[2]   Moreover, during the pendency of the

---

2   Section 36-539(B) now provides:

> The patient and the patient's attorney shall be present at all hearings, and the patient's attorney may subpoena and cross-examine witnesses and present evidence. The patient may choose to not attend the hearing or the patient's attorney may waive the patient's presence. The evidence presented by the petitioner or the patient shall include the testimony of two or more witnesses, **regardless of the witnesses' professional licensure, if any, who observed or were** acquainted with the patient at the time of the alleged mental disorder **before the submission of the current application for evaluation pursuant to [section] 36-520 or, if after the submission of the current application, who were not formal participants in the evaluation process. The testimony of the witnesses shall be limited to observed facts and may not include expert opinion or conclusions**.

2025 Ariz. Sess. Laws ch. 20 § 1 (1st Reg. Sess.) (emphasis added).

appeal, the court's treatment order for A.R. expired. For these reasons, we decline to address this issue as it is moot. As for the second issue, we hold that because A.R. and M.G. did not have a behavioral health professional-client relationship under § 32-3283(A), the related privilege and confidentiality requirements do not apply to preclude M.G. from testifying.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

¶6        A.R. has a history of mental illness. After A.R.'s mother found him confused and unresponsive at home in May of 2023, she brought him to the hospital. M.G. assessed A.R. to provide "level of care" recommendations. Before the assessment, M.G. introduced herself to A.R. as a "crisis interventionist." M.G. further informed A.R. that their conversation was subject to disclosure because it could result in a petition for court-ordered evaluation, and ultimately a petition for COT.

¶7        Based on information from the assessment, M.G. applied for an involuntary evaluation under § 36-520 and for an emergency admission for evaluation under A.R.S. § 36-524. A.N., the medical director at the agency that screened A.R., compiled these applications, along with a "Witness Information Form," and filed a petition for a court-ordered evaluation. The superior court granted the petition, and, following that evaluation, A.N. petitioned for COT under § 36-533.

¶8        Before the hearing on the petition for COT, A.R. moved to preclude M.G. from testifying as one of the two acquaintance witnesses required under § 36-539(B). A.R. asserted that M.G., a "licensed" social worker, had engaged in the "practice of behavioral health" when she conducted the assessment, rendering A.R. her "client." *See* A.R.S. § 32-3251(7), (8), and (2). Accordingly, A.R. argued that the privilege and confidentiality requirements of § 32-3283 applied to M.G. A.R. therefore concluded that M.G. could not testify because he had not waived any privilege and no exceptions to confidentiality applied. The State objected to precluding M.G. because (1) M.G. "told the patient that their conversations were not confidential for purposes of any mental health proceedings and the COT process," (2) "she had only one contact with A.R., which lasted for less than 1/2 hour," and (3) "the patient proceeded to talk to her after her warning."

**¶9**		At the end of the COT hearing in which M.G. testified, the superior court considered and denied A.R.'s motion to preclude and granted the petition for COT.   In doing so, the court specifically referenced M.G.'s "warning" to A.R. regarding the lack of confidentiality of their conversation.

**¶10**		A.R. appealed, and the court of appeals, in a split decision, vacated the superior court's order.   *In re MH2023-004502*, 258 Ariz. 556, 558 ¶ 1 (App. 2024).   The majority concluded that, based on M.G.'s role in her meeting with A.R., M.G. could not testify as an acquaintance witness under § 36-539(B) because the meeting was subject to the privilege and confidentiality requirements of § 32-3283 and no exception to confidentiality applied.   *Id.*

**¶11**		We note again, as did the court of appeals, that the commitment order in this case expired during the pendency of appellate review, rendering this case otherwise moot.   *Id.* at 559 ¶ 9.   Nevertheless, given the frequency with which petitions for COT are filed, the important liberty interests at stake in matters involving involuntary mental health evaluation and treatment, and the likelihood of issues concerning privilege and confidentiality under § 32-3283 recurring yet evading appellate review, we exercise our discretion to consider the merits.   *In re Pima Cnty. Mental Health No. 20200860221*, 255 Ariz. 519, 523–24 ¶ 9 (2023) (explaining that while this Court has consistently refrained from considering moot issues, we will make an exception "'to consider a question of great public importance or one [that] is likely to recur.'" (alteration in original) (quoting *Fraternal Ord. of Police Lodge 2 v. Phx. Emp. Rels. Bd.*, 133 Ariz. 126, 127 (1982)).   We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## II.	DISCUSSION

**¶12**		As questions of law, we review de novo issues concerning statutory interpretation, *State v. Zeitner*, 246 Ariz. 161, 164 ¶ 8 (2019), and "[t]he scope of the behavioral health professional-client privilege," *In re MH2019-004895*, 249 Ariz. 283, 286 ¶ 6 (App. 2020).   When interpreting statutes, we begin with the text.   *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 411 ¶ 8 (2023).   "We interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).

5

**Section 32-3283**

¶13          A.R. challenged M.G.'s testimony on the basis that the assessment she conducted occurred pursuant to a behavioral health professional-client relationship and was thus privileged and confidential under § 32-3283.    In contrast, the State argued that no confidential relationship existed because (1) M.G.'s contact with A.R. was too brief to create a confidential relationship, (2) M.G. disclaimed any confidentiality, and (3) M.G. did not provide A.R. with any behavioral health services.

¶14          In rejecting the State's argument regarding the brevity of the contact, the court of appeals' majority noted that § 32-3283(A) states: "'The confidential relationship between a client and a licensee, including a temporary licensee, is the same as between an attorney and a client.'"    *In re MH2023-004502*, 258 Ariz. at 563 ¶ 26.    The majority, therefore, concluded that there was no time requirement to establish a confidential relationship between a behavioral health provider and a client.    *Id.* ¶ 27. Thus, it did not matter if M.G.'s meeting with A.R. was brief.    *Id.*

¶15          The majority likewise found that M.G.'s purported disclaimer was ineffective because it is the client who holds the privilege for purposes of § 32-3283(A).    *Id.* ¶ 29.    Thus, in the absence of evidence that A.R. had waived the privilege as required by § 32-3283, M.G. was prohibited from testifying.    *Id.*    Although the majority's conclusions on these two points are generally correct, we disagree with the majority's conclusion that a confidential relationship existed between M.G. and A.R.

¶16          In determining whether M.G. and A.R. established a confidential relationship, the majority first considered "the definitions of closely related terms in A.R.S. § 32-3251."    *Id.* at 562 ¶ 21.    It found that M.G. was a licensed social worker who provided "behavioral health services," which include the "practice of social work," to A.R.    *Id.* ¶ 22; § 32-3251(9) ("'Practice of behavioral health' means the . . . practice of social work . . . .").    From this, the majority concluded that A.R., who received behavioral health services, was a "client" of M.G.    *IN RE: MH2023-004502*, 258 Ariz. at 562 ¶ 22; A.R.S. § 32-3251(2) (defining "client" as one who "receives behavioral health services" from a licensed provider). Therefore, the majority determined that a confidential relationship existed and that the information M.G. received from A.R. was "confidential and therefore privileged."    *IN RE: MH2023-004502*, 258 Ariz. at 562–63

¶¶ 23–25.   In support of its conclusion, the majority further observed that "[t]he [L]egislature made the scope of confidentiality between mental health patients and licensed social workers 'the same as between an attorney and a client.'"   *Id.* at 563 ¶ 26 (quoting A.R.S. § 32-3283(A)).

¶17        Section 32-3283(A) states:

> The confidential relationship between a client and a licensee . . . is the same as between an attorney and a client. Unless a client waives this privilege in writing or in court testimony, a licensee shall not voluntarily or involuntarily divulge information that is received by reason of the confidential nature of the behavioral health professional-client relationship.

¶18        A plain reading of § 32-3283(A) makes clear that the confidentiality requirement presupposes the existence of a confidential relationship: "a licensee shall not voluntarily or involuntarily divulge information that is received *by reason of the confidential nature of the behavioral health professional-client relationship*."   (Emphasis added.)   And the Legislature has declared this relationship to be the same as the attorney-client relationship.   *Id.*   Therefore, when considering whether information is subject to § 32-3283(A)'s confidentiality requirement, a court must first determine whether a behavioral health professional-client relationship exists just as a court would determine whether an attorney-client relationship exists.   The majority's reliance on the definitions in § 32-3251 to make this determination is, therefore, misplaced.

¶19        At the outset, we recognize the conceptual dissonance in using the attorney-client relationship as an analogue to a behavioral health professional-client relationship to determine the privileged nature of a communication.   In nearly all circumstances, an attorney's client "look[s] to the lawyer as a protector rather than as an adversary."   *Paradigm Ins. Co. v. Langerman L. Offs., P.A.*, 200 Ariz. 146, 149 ¶ 10 (2001) (quoting *In re Neville*, 147 Ariz. 106, 111 (1985)).   In the mental health care context, on the other hand, the same may not generally be true, particularly if the professional is conducting an evaluation that could lead to involuntary treatment.   *See, e.g.*, § 36-531(B).   Nevertheless, § 32-3283(A)'s directive is unambiguous and controlling.   *See, e.g., In re Drummond*, 257 Ariz. 15, 18

¶ 5 (2024) ("When a statute's plain language is unambiguous in context, it is dispositive.").

**¶20**        This Court recently set out a framework for analyzing whether a communication is privileged in the context of an attorney-client relationship in *Clements v. Bernini*, 249 Ariz. 434, 439–40 ¶ 8 (2020).   Given the Legislature's directive in § 32-3283, we apply the *Clements* framework to determine whether the information M.G. received from A.R. is likewise privileged.

**¶21**        The *Clements* framework provides that "[i]n a dispute over whether a communication is privileged, the party claiming the privilege has the burden of making a prima facie showing that the privilege applies to a specific communication."   *Id.*   To do so, the party asserting the privilege must establish that "1) there is a[] [behavioral health professional-client] relationship, 2) the communication was made to secure or provide [behavioral health services], 3) the communication was made in confidence, and 4) the communication was treated as confidential."   *Id.*   "Each element of the privilege inquiry is fact specific."   *Id.* at 440 ¶ 9.

**¶22**        Whether a confidential behavioral health professional-client relationship exists is initially a subjective inquiry and requires courts to examine "the nature of the work performed and . . . the circumstances under which the confidences were divulged."   *Id.*   (alteration in original) (quoting *Alexander v. Superior Court*, 141 Ariz. 157, 162 (1984)).   Courts examining the circumstances of the communication "must decide whether the party consulting the [behavioral health professional] believes that he or she is approaching the [behavioral health professional] in a professional capacity and with the intent of securing [behavioral health services]."   *Id.* (quoting *State v. Fodor*, 179 Ariz. 442, 448 (App. 1994)).

**¶23**        Here, there is no evidence that A.R. intended to consult M.G. for the purpose of securing behavioral health services.   Indeed, A.R. was not at the hospital voluntarily and did not initiate the interaction with M.G. And, even assuming A.R. believed he was seeking such services, this belief must be objectively reasonable.   *Paradigm Ins. Co.*, 200 Ariz. at 149 ¶ 10.

**¶24**        Two cases from the court of appeals, *In re MH2019-004895*, 249 Ariz. 283 (App. 2020), and *In re MH2020-004882*, 251 Ariz. 584 (App. 2021), illustrate how to determine the objective reasonableness of such a belief.

In each case, the court of appeals focused on three key factors: (1) the nature of the interaction or services provided; (2) the length of the interaction; and (3) any pre-discussion warnings.

**¶25**     In *MH2019-004895*, the court of appeals concluded that the behavioral health professional-client privilege precluded a licensed counselor from testifying as an acquaintance witness in a COT proceeding. 249 Ariz. at 285 ¶ 1.   The court noted that the counselor and the client had a pre-existing relationship, which the counselor acknowledged was a confidential relationship.   Accordingly, the court stated that there was "no reasonable contention that she did not provide behavioral health services" to the client.   *Id.* at 287 ¶ 13.   Furthermore, the counselor's testimony was based on observations she made both before and after the client was taken to the hospital, and not in the context of conducting a preliminary assessment of her patient.   *Id.* ¶ 12.   And there was no evidence that the counselor had informed her client that any of their interactions, before or on the day at issue, "fell outside the scope of a behavioral health professional-client relationship or that [the client] consented to [the counselor's] disclosure of information acquired during such relationship."   *Id.* ¶ 13.   The pre-existing privileged relationship thus precluded her from testifying.   *Id.* at 289 ¶ 17.

**¶26**     Conversely, in *MH2020-004882*, the court of appeals considered two consolidated cases in which social workers testified as acquaintance witnesses at each respective patient's hearing.   The social workers based their testimony on observations during preliminary screenings conducted for the purpose of determining whether the patients "needed to be evaluated by physicians for possible harm to themselves or others."   251 Ariz. at 585 ¶ 1.   Both social workers informed their patients that certain statements could be subject to disclosure.

**¶27**     The first social worker "warned [the patient] that the confidentiality of their conversation had limits and told him that if he made statements about harming himself or others, [the social worker] would be required to report it 'to the appropriate authorities.'"   *Id.* ¶ 3.   The second social worker explained that "she would be asking questions to determine if there was a risk [the patient] might harm herself or others, and that [the patient's] statements in response to those questions would not be as confidential."   *Id.* at 586 ¶ 7.   The court of appeals concluded that there was no confidential relationship in either case where a behavioral health

professional "interact[ed] with a patient only once to assess whether the patient should be evaluated as a risk of harm to themselves or others and . . . warned the patient at the outset that any statements the patient ma[de] about harming self or others w[ould] not remain confidential." *Id.* at 585 ¶ 1, 587 ¶ 18.

**¶28** Turning to A.R.'s interaction with M.G., the circumstances are analogous to the interactions at issue in *MH2020-004882*. A.R. and M.G. interacted only once during the assessment to determine whether further evaluation was necessary. A.R. did not seek out M.G., they had no pre-existing relationship, and their relatively brief conversation was limited to general questions. Additionally, M.G. specifically warned A.R. that their conversation was not confidential. Thus, under these circumstances, any belief on A.R.'s part that he and M.G. had a privileged behavioral health professional-client relationship is not objectively reasonable.[3]

**¶29** We therefore hold that because A.R. cannot establish that a confidential relationship existed, any information received by M.G. from A.R. is not privileged under § 32-3283. *See Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501 (1993) (explaining that "there must be a[] [behavioral health professional-client] relationship *before* the privilege exists" (emphasis added)); *Alexander v. Superior Court*, 141 Ariz. 157, 162 (1984) ("When considering whether a confidence was received, we must *first* determine if a[] [behavioral health professional-client] relationship existed." (emphasis added)). Accordingly, there is no need to consider

---

[3] We remain cognizant of due process concerns in COT proceedings. *See, e.g.*, *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *see also In re MH-2008-000867*, 225 Ariz. 178, 180–81 ¶¶ 8–9 (2010). Thus, any pre-discussion warnings regarding confidentiality or the length of the interaction may not be dispositive in determining whether a confidential relationship exists. *See Foulke v. Knuck*, 162 Ariz. 517, 520 (App. 1989) ("The fact that a consultation is relatively brief does not negate the establishment of an attorney-client relationship.").

the remaining *Clements* factors or the waiver of any privilege under § 32-3283.[4]

### III.   CONCLUSION

**¶30**       For the reasons set forth above, we vacate the opinion of the court of appeals and affirm the superior court's ruling.

---

[4]  Similarly, our resolution does not require us to consider whether M.G.'s assessment of A.R. could ever constitute the "practice of social work" as defined under § 32-3251(12).